UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOUGLAS LIDDELL,

                Petitioner,                                      Civil No. 04-10010

v.                                                      Criminal No. 99-20018
                                                           Honorable David M. Lawson

UNITED STATES OF AMERICA,

                Respondent.

_____/

## OPINION AND ORDER DENYING MOTION TO VACATE SENTENCE

On March 30, 2001, the petitioner was found guilty by a jury of conspiracy to possess cocaine, cocaine base, heroin, and marijuana with intent to distribute in violation of 21 U.S.C. § 846 and possession of marijuana in violation of 21 U.S.C. § 844(a). On September 20, 2001, the petitioner was sentenced to 121 months on the conspiracy count and 24 months on the possession count, to run concurrently. The court of appeals affirmed the convictions on May 22, 2003.

The petitioner thereafter filed eight motions under 28 U.S.C. § 2255. Many of these briefs are identical, and all of them raise only two issues. The petitioner claims he is entitled to relief under *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005), and he argues that criminal history points were assigned erroneously under U.S.S.G. § 4A1.1(b) and (d). The government filed one response brief on March 17, 2004, and the petitioner filed two identical replies on March 31 and April 14, 2004. The Court now finds that the petitioner's claims either lack merit or are procedurally defaulted. The Sixth Circuit has held that *Booker* is not retroactive, and the petitioner failed to raise his claims regarding his criminal history score by objecting at sentencing or arguing them on appeal. Therefore, the motion to vacate sentence will be denied.

I.

On February 25, 1999, a federal grand jury returned a multi-count indictment charging the petitioner and several others with conspiracy to possess and distribute crack cocaine, powder cocaine, heroin, and marijuana. On September 27, 2000, a second superseding indictment was filed charging the petitioner and twenty-one others with various drug and gun crimes. The petitioner was charged with conspiracy to possess and distribute various illegal controlled substances in violation of 21 U.S.C. § 846 (count 1); possession of heroin (count 36); and possession of marijuana (count 37). The indictment alleged that the conspiracy began at an unknown date and continued until July 6, 1999; the possession offenses were alleged to have been committed on December 3, 1998. Many members of the conspiracy pleaded guilty, and on March 1, 2001, a jury trial commenced against the petitioner and five other defendants. On March 30, 2001, the jury returned its verdict finding the petitioner guilty of conspiracy to possess with intent to distribute less than 100 grams of heroin on count one and guilty of possession of an unspecified amount of marijuana on count thirty-seven.

The petitioner's presentence report (PSR) recommended an offense level of 32 after concluding that the petitioner was responsible for the distribution of 1,300 kilograms of marijuana equivalency. The PSR reported the petitioner's criminal history as consisting of a state court conviction of delivery of narcotics under 50 grams, and receiving and concealing weapons. The state court sentenced the petitioner on the drug charge to twelve months imprisonment followed by lifetime probation. He was released from state custody on November 29, 1995. Because the petitioner was on probation when the offense occurred, two points were added to his criminal history score pursuant to U.S. Sentencing Guidelines Manual § 4A1.1(d) (Nov. 1, 2000). The probation department also concluded that the petitioner became involved in the conspiracy in 1996, stating:

> In 1996, Sheila Stinson began buying heroin from Ruby Liddell in an attempt to make some money. Sheila Stinson bought one to two grams from Ruby Liddell on an average of once or twice per week for six months. She stopped buying heroin from Ruby Liddell when she became addicted to heroin and then she bought heroin from DOUGLAS LIDDELL, Eddie Isom and others. Sheila Stinson bought $50.00 (approximately .3 of a gram) or $100.00 (approximately .6 of a gram) amounts of heroin from DOUGLAS LIDDELL three to four times per day for approximately 18 months. On at least ten occasions, Sheila Stinson was asked by DOUGLAS LIDDELL to deliver $50.00 amounts of heroin to other customers of Ruby Liddell. Sheila Stinson was paid with heroin for her efforts on each of these occasions. Sheila Stinson obtained heroin from Eddie Isom at least five times. On each of these occasions, Sheila Stinson obtained a "paper" of heroin which would be approximately .1 of a gram. Ruby Liddell, DOUGLAS LIDDELL, and Eddie Isom would come to Sheila Stinson's home and discuss selling heroin. Sheila Stinson believed that Ruby Liddell was supplying heroin to DOUGLAS LIDDELL and Eddie Isom as well as Leroy Austin who also sold heroin to Sheila Stinson on occasion.

PSR ¶ 21. Because the petitioner participated in the conspiracy less than two years after his release from state custody, another point was added to the petitioner's criminal history score pursuant to U.S.S.G. § 4A1.1(e). This resulted in a criminal history score of five, which placed the petitioner in criminal history category of III. The probation department recommended a sentence range of 151 to 188 months.

The petitioner filed objections to the PSR on several grounds. He specifically objected to the imposition of an additional criminal history point under U.S.S.G. § 4A1.1(e) based on the commission of the offense less than two years after his release from state custody. He did not object to the imposition of two points due to the fact that he was on probation at the time the crime was committed.

The government responded by filing a sentencing memorandum on September 7, 2004 in which it argued that the facts introduced at trial supported the factual narrative in the PSR. On September 13, 2004, the government filed a supplemental sentencing memorandum setting forth the

amount of drugs for which it believed the petitioner should be held accountable (equivalent of

18,959.17 kg of marijuana). This amount corresponds to an offense level of 36. On September 20,

2004, the petitioner filed a response to the supplemental sentencing memorandum in which he

contended that he was not connected with many of the drug transactions listed in the government's

memoranda.

At the sentence hearing on September 20, 2001, the Court found that the petitioner was

accountable only for 977 kilograms of marijuana equivalency, resulting in a a base offense level of

30. The petitioner did not challenge his criminal history score, and the sentencing range was found

to be 121 to 151 months in custody. A mandatory minimum sentence of 120 months applied to the

conviction on count 1. The Court sentenced the petitioner to 121 months on count 1 and 24 months

on count 37, to run concurrently.

The petitioner appealed to the Sixth Circuit, raising three arguments. First, he argued that

his sentence violated due process because he was sentenced using drug quantities which were not

specifically found by the jury. The court of appeals rejected this argument because the sentence

imposed was below the statutory maximum allowed for the crimes. The petitioner next argued that

the Court erred in applying a preponderance of the evidence standard at sentencing. The jury found

the petitioner responsible for less than 100 grams of heroin, however the Court found him

responsible for 977 kilograms of marijuana equivalency, which increased the petitioner's sentence.

The court of appeals rejected this argument as well. The court concluded that *McMillan v.

Pennsylvania*, 477 U.S. 79 (1986), "requires that evidence used for sentencing be found only by a

preponderance of the evidence." *United States v. Liddell*, 64 Fed. Appx. 958, 961 (6th Cir. 2003)

(unpublished). The petitioner's final argument was that the evidence did not support a finding, even

under the preponderance standard, that he was responsible for 977 kilograms of marijuana equivalency and the Court relied on unreliable witnesses in coming to its conclusion. The court of appeals found no clear error in this Court's credibility determinations. The court of appeals affirmed the convictions on May 22, 2003. *United States v. Liddell*, 64 Fed. Appx. 958 (6th Cir. May 22, 2003) (unpublished). The petitioner did not petition for certiorari to the Supreme Court.

As noted above, the petitioner filed eight motions for relief under section 2255. However, together all of these motions raise but two arguments, and there is no need to evaluate the motions as successive petitions. First, the petitioner argues that the Court erred in using a preponderance of the evidence standard to determine the quantity of drugs for which he should be sentenced. Second, the petitioner contends that his criminal history score was wrongly scored under U.S.S.G. § 4A1.1(b), (d).

II.

A.

The petitioner's first argument is that he is entitled to relief under *Blakely v. Washington*, 542 U.S. 296 (June 24, 2004), and *United States v. Booker*, 543 U.S. 220 (Jan. 12, 2005), because the Court used a preponderance of the evidence standard in determining the quantity of drugs for which he was accountable for sentencing purposes. However, the Sixth Circuit has held that *Booker* "does not apply retroactively to cases already final on direct review." *Humphress v. United States*, 398 F.3d 855, 857 (6th Cir. 2005). The court recently reaffirmed the holding of *Humphress* in *Lang v. United States*, 474 F.3d 348, 353-57 (6th Cir. 2007). The petitioner's case became final on August 20, 2003, ten months prior to *Blakely* and almost a year and five months before *Booker* was decided. This claim must therefore be rejected.

In *Humphress*, the court explained the law as follows:

> Generally speaking, federal habeas corpus petitioners may not rely on new rules of criminal procedure handed down after their convictions have become final on direct appeal. *Schriro v. Summerlin*, 542 U.S. 348 (2004). In *Teague v. Lane*, 489 U.S. 288 (1989), however, the Supreme Court announced a three-step analysis to determine whether a new rule of criminal procedure applies to a case on collateral review. The reviewing court must first determine when the defendant's conviction became final. *Beard v. Banks*, 542 U.S. 406 (2004). Next, the court must decide whether the rule in question is actually "new." *Id.* If it is, the court must determine whether the new rule falls into either of two exceptions to nonretroactivity. *Id.*

*Humphress*, 398 F.3d at 860 (footnote omitted). The court then determined that *Booker* is a new rule, but that it does not fall within either exception to non-retroactivity.

The petitioner failed to extend his appeal following the Sixth Circuit's decision affirming his convictions on May 22, 2003. His conviction therefore became final ninety days later, on August 20, 2003. *See Humphress*, 398 F.3d at 860. This Court must therefore "assay the legal landscape" as of August 20, 2003 and "ask 'whether the rule later announced in [*Booker*] was dictated by then-existing precedent – whether, that is, the unlawfulness of [respondent's] conviction was apparent to all reasonable jurists." *Ibid* (alterations in original) (quoting *Beard*, 542 U.S. at 413). "The *Booker* rule is clearly new. It was not dictated by precedent existing at the time" the petitioner's conviction became final in August 2003. *Humphress*, 398 F.3d at 861. *Blakely* had not even been decided at that time. The final step is to "determine whether the new rule falls into either of two exceptions to nonretroactivity." *Humphress*, 98 F.3d at 860. The first exception applies when the new rule forbids punishment of certain conduct or "'prohibit[s] a certain category of punishment for a class of defendants because of their status or offense.'" *Id.* at 862 (quoting *Beard*, 542 U.S. at 416). *Booker* does not do this. The second exception applies to "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Ibid*.

(quoting *Beard*, 542 U.S. at 416). "The Supreme Court has never held that a new rule of criminal procedure falls within *Teague's* second exception. *Beard*, 124 S.Ct. at 2513-14. We hold that *Booker's* rule does not either." *Humphress*, 398 F.3d at 863. The petitioner's first claim, therefore, must be rejected.

B.

The petitioner's remaining claim is that the Court erred by adding points to his criminal history score under U.S.S.G. § 4A1.1(b), which adds two points for each prior sentence of imprisonment between 60 days and 13 months in length, and U.S.S.G. § 4A1.1(d), which applies when a defendant commits a crime while under a criminal justice sentence, including probation. The petitioner contends that section 4A1.1(d) should not apply because his state probation had been dismissed, and therefore he should not have received an additional two criminal history points. As evidence, the petitioner has submitted what appears to be an order from the Saginaw County circuit court discharging him from probation. Although the petitioner cites 4A1.1(b) and asserts that the Court erred in enhancing his sentence under that provision, he does not explain the basis for this claim.

The government argues that this claim is not reviewable because the petitioner did not object to the enhancement in this Court or on direct appeal. A claim that could have been raised on direct appeal is not reviewable in a section 2255 motion unless the petitioner can demonstrate cause and prejudice, and according to the government, the petitioner has made no such showing. The government also argues that the claim regarding the sentencing enhancement is not a claim of constitutional magnitude justifying relief under section 2255. Finally, the government states the petitioner's claim has no merit.

The petitioner filed a reply brief asserting ineffective assistance as cause and prejudice for his failure to object to the sentencing enhancement in this Court or the court of appeals. The petitioner contends that he "emphatically" told his attorney to challenge the criminal history points. The petitioner contends that his attorney should have spoken to the probation officer and the probation officer would have told the petitioner's attorney that the petitioner was about to be released from probation.

The government is correct that this claim is procedurally defaulted. Because the petitioner failed to appeal this issue, his claims are procedurally barred unless he can establish both cause and prejudice. *Bousley v. United States*, 523 U.S. 614, 621-22 (1998). A "claim of ineffective assistance of counsel . . . can serve as both cause and prejudice, excusing a procedural default in an underlying substantive claim." *Franklin v. Anderson*, 434 F.3d 412, 418 (6th Cir. 2006). However, "there can be no constitutional deficiency in appellate counsel's failure to raise meritless issues." *Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999). The petitioner's claims regarding his criminal history points have no merit, and therefore his attorney was not ineffective for failing to raise them. Therefore, they are procedurally barred.

The Sentencing Guidelines in effect at the time of the petitioner's sentencing contained the following provision:

> § 4A1.1. Criminal History Category
> The total points from items (a) through (f) determine the criminal history category in the Sentencing Table in Chapter Five, Part A.
> (a) Add 3 points for each prior sentence of imprisonment exceeding one year and one month.
> (b) Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a).
> . . .

(d) Add 2 points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.

U.S.S.G. § 4A1.1 (2001). The petitioner has submitted an order discharging him from the state court probation that triggered the application of section 4A1.1(d), but the order is dated November 5, 2001, and the petitioner participated in the conspiracy beginning in 1996. The petitioner has not submitted any evidence that he was not on probation in 1996 when the crime was committed. In fact, according to the state probation officer, the only reason the petitioner was discharged from probation is due to his conviction in this Court. The discharge order contains the probation officer's reasons for asking the state court to discharge the petitioner from probation, and Probation Officer Russell C. Ray cites the petitioner's convictions by a jury of count one and count thirty-seven and this Court's sentence of 121 months in custody to be followed by six years of supervised release. The petitioner has presented no evidence or argument supporting his claim that 4A1.1(b) does not apply. This claim must be rejected.

III.

The Court finds that the petitioner has not established that the sentence in this case was imposed in violation of the Constitution or laws of the United States. The petitioner, therefore, is not entitled to relief under 28 U.S.C. § 2255.

Accordingly, it is **ORDERED** that the petitioner's motions to vacate sentence [dkt. # 886, 910, 912, 925, 926, 931, 933, 935] are **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   June 25, 2007

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 25, 2007.

s/Felicia M. Moses
FELICIA M. MOSES